## IN THE UNITED STATES DISTRICT COURT FOR THE
## WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| TERRA WALKER, et al., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| vs. | ) | Case No. CIV-14-914-L |
| | ) | |
| APEX WIND CONSTRUCTION, | ) | |
| LLC, et al., | ) | |
| | ) | |
| Defendants. | ) | |

---

## CERTAIN DEFENDANTS' MOTION TO DISMISS AND SUPPORTING BRIEF

---

Submitted this 23rd day of September, 2014 by:

Timothy J. Bomhoff, OBA #13172
J. Todd Woolery, OBA #18882
Jodi Cole, OBA #22107
Patrick L. Stein, OBA #30737

MCAFEE & TAFT A Professional Corporation
Tenth Floor, Two Leadership Square
211 North Robinson
Oklahoma City, Oklahoma 73102-7103
Telephone:  (405) 235-9621
Facsimile:  (4050 235-0439
tim.bomhoff@mcafeetaft.com
todd.woolery@mcafeetaft.com
jodi.cole@mcafeetaft.com
patrick.stein@mcafeetaft.com

**Attorneys for Defendants Apex Wind Construction,
LLC, Apex Clean Energy, Inc., Apex Clean Energy
Holdings, LLC, Kingfisher Wind, LLC, Kingfisher
Transmission, LLC, Campbell Creek Wind, LLC,
and Campbell Creek Wind Transmission, LLC**

# **TABLE OF CONTENTS**

Introduction ................................................................................................ 1

Arguments and Authorities ......................................................................... 3

    I.     The Association Lacks Standing. .................................................. 3

          A.    The Association does not appear to be an appropriate
               membership organization. ................................................. 4

          B.    The claims asserted here will require individual
               participation by the Associations' alleged members........................ 6

    II.    The Complaint is Insufficient under Rule 12(b)(6)....................... 9

          A.    The Complaint is deficient because it fails to distinguish
               between Defendants. ......................................................... 9

          B.    Plaintiffs' anticipatory nuisance claim should be dismissed
               because the Complaint does not plausibly suggest any
               Plaintiff is likely to suffer substantial, irreparable harm................. 11

          C.    Plaintiffs' anticipatory trespass claim should be dismissed
               because the Complaint fails to identify an anticipated or
               actual physical invasion of Plaintiffs' property. ............................ 17

    III.    The Class Action Allegations Should be Dismissed.................... 18

          A.    The proposed class is not presently ascertainable........................... 19

          B.    The complaint does not plausibly suggest the
               prospective class members are so numerous that
               joinder is impracticable. ................................................... 20

Conclusion ................................................................................................ 21

## **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Am. Legal Foundation v. F.C.C.*,
    808 F.2d 84 (D.C. Cir. 1987) ........................................................................ 5

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) ..................................................................................... 9

*Ass'n for Retarded Citizens of Dallas v. Dallas County Mental Health &*
    *Mental Retardation Ctr.*,
    19 F.3d 241 (5th Cir. 1994) ......................................................................... 5

*Bano v. Union Carbide Corp.*,
    361 F.3d 696 (2d Cir. 2004) .......................................................................... 8

*Beal v. W. Farmers Elec. Co-op.*,
    228 P.3d 538 (Okla. Civ. App. 2010) ......................................................... 18

*Bell Atlantic Corp. v. Twombly*,
    550 U.S. 544 (2007) ..................................................................................... 9

*Bixby v. Cravens*,
    156 P. 1184 (Okla. 1916) (per curiam) ................................................. 12, 15

*Briscoe v. Harper Oil Co.*,
    702 P.2d 33 (Okla. 1985) ........................................................................... 11

*Burlington N. & Santa Fe Ry. Co. v. Grant*,
    505 F.3d 1013 (10th Cir. 2007) ................................................................. 13

*Chieftain Royalty Co. v. Dominion Okla. Tex. Exploration & Prod., Inc.*,
    No. CIV-11-344-R, 2011 WL 9527717 (W.D. Okla. July 14, 2011) ......................... 11

*City of McAlester v. King*,
    317 P.2d 265 (Okla. 1957) ......................................................................... 16

*Combs v. Shelter Mut. Ins. Co.*,
    551 F.3d 991 (10th Cir. 2008) ................................................................... 14

*Cox v. Allstate Ins. Co.*,
    No. CIV-07-1449-L, 2009 WL 2591673 ..................................................... 18

*Crosby v. Social Sec. Admin.*,
    796 F.2d 576 (1st Cir. 1986) ................................................................ 19

*Fund Democracy, LLC v. S.E.C.*,
    278 F.3d 21 (D.C. Cir. 2002) .................................................................. 5

*Garcia v. Seterus, Inc.*,
    No. CV F 12-2049 LJO SAB, 2013 WL 1281565 (E.D. Cal. March 27,
    2013) (unpublished) .............................................................................. 10

*Gilbert v. Sec. Fin. Corp. of Okla., Inc.*,
    152 P.3d 165 (Okla. 2006) .................................................................... 10

*Hayes v. Wal-Mart Stores, Inc.*,
    725 F.3d 349 (3d Cir. 2013) .................................................................. 19

*In re Holocaust Victim Assets Litig.*,
    225 F.3d 191 (2d Cir. 2000) .................................................................... 5

*Hope, Inc. v. DuPage County, Ill.*,
    738 F.2d 797 (7th Cir. 1984) .................................................................. 5

*Hunt v. Wash. State Apple Adver. Comm'n*,
    432 U.S. 333 (1977), *superseded in part by statute as stated in United*
    *Food & Commercial Workers Union v. Brown Group, Inc.*, 517 U.S.
    544 (1996) .................................................................................... 5, 7, 8

*Individuals for Responsible Gov't, Inc. v. Washoe County ex rel. Bd. of*
    *County Comm'rs*,
    110 F.3d 699 (9th Cir. 1997) .................................................................. 6

*John v. Nat'l Sec. Fire & Cas. Co.*,
    501 F.3d 443 (5th Cir. 2007) ................................................................ 19

*Kan. Health Care Ass'n, Inc. v. Kan. Dep't of Soc. & Rehab. Servs.*,
    958 F.2d 1018 (10th Cir. 1992) .......................................................... 7, 8

*Kansas Penn Gaming, LLC v. Collins*,
    656 F.3d 1210 (10th Cir. 2011) ............................................................. 9

*Khalik v. United Air Lines*,
    671 F.3d 1188 (10th Cir. 2012) ............................................................. 9

*McPherson v. First Presbyterian Church of Woodward*,
    248 P. 561 (Okla. 1926) ....................................................................... 12

*N.Y. State Club Ass'n, Inc. v. City of New York*,
   487 U.S. 1 (1988) ................................................................................................. 5

*Nichols v. Mid-Continent Pipe Line Co.*,
   933 P.2d 272 (Okla. 1996) ................................................................................ 12

*O'Laughlin v. City of Ft. Gibson*,
   389 P.2d 506 (Okla. 1964) ................................................................................ 13

*Osage Nation ex rel. Osage Minerals Council v. Wind Capital Group, LLC*,
   No. 11-CV-643-GKF-PJC, 2011 WL 6371384 (N.D. Okla. Dec. 20,
   2011) (unpublished) .......................................................................................... 13

*Parks v. U.S. Internal Revenue Serv.*,
   618 F.2d 677 (10th Cir. 1980) ............................................................................ 7

*Pena v. Greffet*,
   922 F. Supp. 2d 1187 (D.N.M. 2013) ............................................................... 10

*Ridge at Red Hawk, L.L.C. v. Schneider*,
   493 F.3d 1174 (10th Cir. 2007) ........................................................................ 15

*Roberts v. Target Corp.*,
   No. CIV-11-951-HE, 2012 WL 2357420 (W.D. Okla. June 20, 2012) ....................... 18

*Romberio v. Unumprovident Corp.*,
   385 F. App'x 423 (6th Cir. 2009) (unpublished) .............................................. 19

*Sharp v. 251st Street Landfill, Inc.*,
   925 P.2d 546 (Okla. 1996) ...................................................................... 8, 13, 17

*Shook v. El Paso County*,
   386 F.3d 963 (10th Cir. 2004) .......................................................................... 19

*Summers v. Earth Island Institute*,
   555 U.S. 488 (2009) ........................................................................................ 3, 6

*Swiss Reinsurance Am. Corp. v. Access Gen. Agency, Inc.*,
   571 F. Supp. 2d 882 (N.D. Ill. 2008) ................................................................ 10

*Thornton v. PPG Indus., Inc.*,
   No. CIV-11-252-RAW, 2011 WL 4528508 (E.D. Okla. Sept. 26, 2011)
   (unpublished) .................................................................................................... 10

*United Food & Commercial Workers Union v. Brown Group, Inc.*,
   517 U.S. 544 (1996) ............................................................................................ 7

*United States v. Rodriguez-Aguirre*,
   264 F.3d 1195 (10th Cir. 2001) ...................................................................... 4

*Utah Ass'n of Counties v. Bush*,
   455 F.3d 1094 (10th Cir. 2006) ..................................................................... 4

*Williams v. CitiMortgage, Inc.*,
   No. CIV-13-354-M, 2014 WL 1406601 (W.D. Okla. April 10, 2014)
   (unpublished) ................................................................................................ 18

*Williamson v. Fowler Toyota, Inc.*,
   956 P.2d 858 (Okla. 1998) ........................................................................... 18

**Statutes**

17 Okla. Stat. § 160.12(2) ................................................................................ 12

50 Okla. Stat. § 1 ............................................................................................. 11

50 Okla. Stat. § 2 ............................................................................................. 12

50 Okla. Stat. § 3 ............................................................................................. 12

60 Okla. Stat. 820.1 ......................................................................................... 12

**Other Authorities**

Federal Rules of Civil Procedure 8(a)(2) ....................................................... 10

Federal Rules of Civil Procedure 12 ................................................. 1, 9, 10, 18

Federal Rules of Civil Procedure 23 ..................................................... 18, 19, 20

1 William B. Rubenstein et al., *Newberg on Class Actions* § 3:11 (5th ed.) ................... 20

## CERTAIN DEFENDANTS' MOTION TO DISMISS AND SUPPORTING BRIEF

Plaintiffs filed this putative class action to enjoin the construction of a proposed wind farm that will be located on private property in Canadian and Kingfisher Counties. Certain Defendants[1] move the Court to dismiss Plaintiffs' Complaint [Doc. #1] under Rules 12(b)(1) & (b)(6) of the Federal Rules of Civil Procedure.  In support of their motion, Defendants submit the following brief.

## Introduction

Defendant Kingfisher Wind, LLC ("Kingfisher Wind") intends to build and operate a wind farm in rural Canadian and Kingfisher Counties.  To that end, Kingfisher Wind has acquired private wind leases and easements from individuals who own land in that area, entered into various agreements with local and state governments and committed a considerable amount of money and effort to the project.[2]  The wind turbines will be built and operated entirely on the private property of leasing landowners.  Those leasing landowners will receive annual lease payments based on the sale of clean electricity generated by the wind turbines.  It is anticipated that the development, construction and operation of the wind farm will have a significant positive impact on the local economies and school systems.  Additionally, the wind farm will further the goals

---

[1] All named Defendants other than Kingfisher Wind Land Holdings, LLC bring this motion.

[2] The projected cost estimate for the wind farm is approximately $425,000,000 and Kingfisher Wind has already expended considerable amounts of money in developing the wind farm.

1

of energy independence and of securing safe, clean, affordable renewable electricity needed to power the growing energy demands of Oklahoma and the United States.

According to the Complaint, the Individual Plaintiffs[3] own land and live within three miles of a proposed turbine location.  (Complaint, ¶¶ 5-12, 36).  Additionally, Plaintiff Oklahoma Wind Action Association (the "Association") purports to represent landowners who live and own property in the same area.  (Complaint, ¶ 37). [4]  Plaintiffs oppose the proposed wind farm and have been interfering with Kingfisher Wind's and the leasing landowners' private contractual agreements and with efforts to move forward with the project for approximately two years.  Now that their petitions to city, county, and state governments have failed, Plaintiffs filed this lawsuit as a last-ditch effort to stop the proposed wind farm.  (Complaint, ¶¶ 25-26).

Plaintiffs assert claims for anticipatory nuisance and anticipatory trespass. Generally speaking, and without credible scientific support, Plaintiffs allege that wind turbines emit low-frequency sound and cause flickering sunlight that have been reported to cause vague health effects or aggravate existing medical conditions in people who live near them.  Plaintiffs also contend the proposed wind farm will decrease the value of their properties.   Based on these alleged, anticipated injuries, Plaintiffs seek to enjoin construction of the proposed wind farm altogether.

---

[3] The Individual Plaintiffs are Terra Walker, Cheyenne Ward, Julie Harris, Janelle Grellner, Elise Kay Kochenower, Karri Parson, and Cindy Shelley.

[4] The Complaint does not specify how many members the Association has, and whether any of those members reside in the alleged affected area.

As will be explained below, the Complaint fails to plead facts sufficient to plausibly suggest that Plaintiffs will be able to prevail on their asserted claims.  First, the Complaint fails to establish that the Association has standing to sue, either on behalf of itself or its purported members.   Second, the Complaint impermissibly lumps all Defendants together without pleading any facts to support Plaintiffs' asserted alter ego and agency theories.   Additionally, Plaintiffs' anticipatory nuisance claim should be dismissed because the Complaint fails to allege a plausible basis for concluding these Plaintiffs will suffer a substantial, irreparable injury if the proposed wind farm is not enjoined.   Further, the anticipatory trespass claim should be dismissed because the Complaint does not allege Plaintiffs' property is likely to be physically invaded by the turbines.  Finally, the class action allegations should be dismissed because the proposed class is unascertainable and the class allegations do not plausibly suggest class treatment is appropriate.  Therefore, the Court should dismiss Plaintiffs' Complaint in its entirety.

## Arguments and Authorities

### I.     The Association Lacks Standing.

Article III limits federal court jurisdiction to "Cases" and "Controversies." The doctrine of standing stems from this limitation and requires Plaintiffs to demonstrate they have or will imminently suffer an injury in fact that is fairly traceable to Defendants' alleged conduct and likely to be redressed by a favorable judicial decision.  *See Summers v. Earth Island Institute*, 555 U.S. 488, 493 (2009).  Lacking here is the injury-in-fact requirement, which requires Plaintiffs to have suffered or be under threat of suffering an injury that is "concrete and particularized" and "actual and imminent."  *See id.*  Although

3

the Association purports to "bring[] this lawsuit on behalf of itself and its members," (Complaint, ¶ 12), the Complaint fails to identify any injury the proposed wind farm will cause to the Association itself.  As a result, the Association must rely on "association standing" to assert the alleged injuries of its members.  For the reasons discussed below, association standing is not available to the Association in this case.

In order to have association standing to sue on behalf of its members, the Association must demonstrate: "(a) its members would otherwise have standing to sue in their own right; (b) the interests it seeks to protect are germane to the organization's purpose; and (c) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit."  *Utah Ass'n of Counties v. Bush*, 455 F.3d 1094, 1099 (10th Cir. 2006) (quoting *Hunt v. Wash. State Apple Adver. Comm'n*, 432 U.S. 333, 342 (1977), *superseded in part by statute as stated in United Food & Commercial Workers Union v. Brown Group, Inc.*, 517 U.S. 544 (1996)).  Based on the allegations contained in the Complaint, [5] the Association does not satisfy the first or third requirements in this case.

### A.   The Association does not appear to be an appropriate membership organization.

Implicit in the first element is the requirement that the Association be a membership organization that has members who participate in and guide the organization's activities.  Association standing is most appropriate when the organization

---

[5] As this is a facial challenge to the Association's standing, the Court should accept the allegations in the Complaint as true and construe them in Plaintiffs' favor.  *See United States v. Rodriguez-Aguirre*, 264 F.3d 1195, 1203 (10th Cir. 2001).

4

at issue is a "traditional voluntary membership organizations"—such as a trade association.  *See generally Hunt*, 432 U.S. at 342.  Although non-profit corporations and other entities may properly invoke association standing, *e.g. N.Y. State Club Ass'n, Inc. v. City of New York*, 487 U.S. 1, 8-9 (1988), such entities may do so only if they operate as "the functional equivalent of a traditional membership organization."  *Fund Democracy, LLC v. S.E.C.*, 278 F.3d 21, 25 (D.C. Cir. 2002) (citing *Hunt*).

In determining whether an entity is the functional equivalent of a traditional membership organization, the Court should look at whether the purported members actively participate in, control, and fund the organization's activities.  *See Am. Legal Foundation v. F.C.C.*, 808 F.2d 84, 90 (D.C. Cir. 1987) (analyzing *Hunt* at length).  If the purported members do not play a role in selecting the organization's leadership, guiding its activities, and financing those activities, association standing is not appropriate.  *See, e.g., Fund Democracy*, 278 F.3d at 26. [6]

In this case, the Association has alleged only that (i) it is suing on behalf of its purported members (Complaint, ¶ 12), and (ii) that it "represents a large group of landowners in Canadian and Kingfisher Counties, Oklahoma, who live and own property within the immediate vicinity, at least within three (3) miles, of Defendants' currently

---

[6] *Accord In re Holocaust Victim Assets Litig.*, 225 F.3d 191, 196 (2d Cir. 2000) (holding organization lacked association standing when record failed to establish that organization "functioned effectively as a membership organization."); *Ass'n for Retarded Citizens of Dallas v. Dallas County Mental Health & Mental Retardation Ctr.*, 19 F.3d 241, 244 (5th Cir. 1994) (denying association standing when organization sought to represent persons who were "unable to participate in and guide the organization's efforts."); *Hope, Inc. v. DuPage County, Ill.*, 738 F.2d 797, 814-15 (7th Cir. 1984) (holding organization could not represent persons who were not "the substantial equivalent of members" of the organization).

planned IWECS." (Complaint, ¶ 37). The Complaint is silent, however, as to how many members the Association has, or whether or how those purported members participate in and guide the Association's activities. Therefore, the Complaint does not plausibly suggest the Association is the functional equivalent of a traditional membership organization.

Perhaps more importantly, the Complaint does not identify a single Association member who will allegedly be injured by the proposed wind farm. In fact, the Complaint does not even allege whether the landowners the Association purports to represent are actually members of the Association. (Complaint, ¶ 37). Absent allegations identifying at least one member it is suing on behalf of and stating the Association's purpose, the Complaint is deficient. *See Individuals for Responsible Gov't, Inc. v. Washoe County ex rel. Bd. of County Comm'rs*, 110 F.3d 699, 702 (9th Cir. 1997) (finding organization lacked standing because record failed to specify the organization's members or purpose); *see also Summers*, 555 U.S. at 498 (noting that extant Supreme Court precedent "require[s] plaintiff-organizations to make specific allegations establishing that at least one identified member ha[s] suffered or w[ill] suffer harm."). Therefore, the Complaint fails to establish the Association has standing to sue on behalf of its purported members.

**B.      The claims asserted here will require individual participation by the Associations' alleged members.**

Even if the Court is satisfied the Association is representing actual members who have standing to sue individually, organization standing is nonetheless inappropriate in this case. The Association may sue on behalf of its members only if "neither the claim

asserted nor the relief requested requires the participation of individual members in the lawsuit."[7]  *Hunt*, 432 U.S. at 343.  Most commonly, this requirement is invoked to prevent an organization from suing for damages suffered by its members.  *See, e.g., Parks v. U.S. Internal Revenue Serv.*, 618 F.2d 677, 685 (10th Cir. 1980).  That is not its sole office, however, as it also precludes an organization from seeking injunctive or declaratory relief when the claims asserted will require evidence particular to the individual members.  *See Kan. Health Care Ass'n, Inc. v. Kan. Dep't of Soc. & Rehab. Servs.*, 958 F.2d 1018, 1023 (10th Cir. 1992).

In *Kansas Health Care Association*, two nonprofit health care associations challenged Kansas' plan to freeze the Medicaid reimbursement rate.  The associations filed the lawsuit on behalf of their members, nursing facilities in Kansas that participated in the state's Medicaid program.  The associations alleged the state's plan ran afoul of federal law and would generally harm the nursing facilities by imposing rates that were not "adequate and reasonable," and they sought injunctive and declaratory relief.  The Tenth Circuit concluded the two organizations lacked association standing to seek that prospective relief because the associations would have to present evidence particular to their individual members in order to prove their claims.  *See* 958 F.2d at 1022.  For example, in order to prove the proposed rates were not adequate and reasonable, the associations would have to prove specific members operated efficiently and economically and that the state's proposed rates would have a detrimental effect on such providers.  *See*

---

[7] This third element is a prudential requirement, not a Constitutional mandate.  *See United Food & Commercial Workers Union v. Brown Group, Inc.*, 517 U.S. 544, 556 (1996).

*id.* at 1023.   Because individualized proof was required, association standing was inappropriate.

The Second Circuit reached a similar conclusion in *Bano v. Union Carbide Corp.*, 361 F.3d 696 (2d Cir. 2004).   In *Bano*, an individual plaintiff and several organizations alleged the defendant was responsible for water contamination in Bhopal, India.   The organization-plaintiffs sought both money damages and injunctive relief on behalf of Bhopal residents.   The court held the organizations lacked association standing.   *See id.* at 713-16.   With respect to the organizations' request for injunctive relief (remediation), the court concluded the third prong of the *Hunt* test was not satisfied because individual proof as to each property would be required, including consideration of "each owner's actual and intended use or uses of his or her land . . ."   *Id.* at 715-16.

The anticipatory private nuisance claim asserted by the Association in this case is similar.[8]   In order to prevail on this claim, the Association will have to prove by clear and convincing evidence that the proposed wind farm will unreasonably and substantially interfere with the its members' use and enjoyment of their property in a manner that is not compensable by money damages.   *See Sharp v. 251st Street Landfill, Inc.*, 925 P.2d 546, 552 (Okla. 1996).   The reasonableness determination will necessarily depend on proof particular to each member, including how the member's property is currently being used, how far away from a proposed turbine each property is, and the personal characteristics of each member.   For example, whether a proposed turbine will

_____

[8] The trespass claim is ignored because Plaintiffs have not alleged an actual or anticipated physical invasion of their property.  *See* Part II.C, below.

unreasonably interfere with the use and enjoyment of a residence across the road is a much different question than whether the same turbine will unreasonably interfere with the use of cow pasture three miles away. Because the Association will have to present proof particular to its individual members in order to prevail on its anticipatory private nuisance claim, organization standing is inappropriate.

## II.    The Complaint is Insufficient under Rule 12(b)(6).

In order to survive a motion to dismiss under Rule 12(b)(6), a complaint must contain well-pleaded factual allegations sufficient "to state a claim to relief that is plausible on its face." *Khalik v. United Air Lines*, 671 F.3d 1188, 1190 (10th Cir. 2012) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "Factual allegations must be enough to raise a right to relief above the speculative level," *Twombly*, 550 U.S. at 555, and "a formulaic recitation of the elements of a cause of action will not suffice." *Khalik*, 671 F.3d at 1191 (quotation omitted). Although the Court must accept all well-pleaded factual allegations in a complaint as true when ruling on a motion to dismiss, the Court should disregard mere labels and legal conclusions masked as factual allegations. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009).

### A.    The Complaint is deficient because it fails to distinguish between Defendants.

When multiple defendants are joined in a lawsuit, the Complaint should "make clear exactly who is alleged to have done what to whom . . ." *See Kansas Penn Gaming, LLC v. Collins*, 656 F.3d 1210, 1215 (10th Cir. 2011) (quoting *Robbins v. Oklahoma*, 519

F.3d 1242, 1250 (10th Cir. 2008)). [9]  "A plaintiff suing multiple defendants must allege the basis of his claim against each defendant to satisfy Federal Rule of Civil Procedure 8(a)(2) . . ." *Garcia v. Seterus, Inc.*, No. CV F 12-2049 LJO SAB, 2013 WL 1281565, at *5 (E.D. Cal. March 27, 2013) (unpublished).  Thus, a complaint that lumps defendants together and fails to specify what alleged conduct is attributable to which defendant is subject to dismissal.  *See, e.g., Swiss Reinsurance Am. Corp. v. Access Gen. Agency, Inc.*, 571 F. Supp. 2d 882, 885 (N.D. Ill. 2008).

Corporations and limited liability companies are distinct legal entities.  *See Gilbert v. Sec. Fin. Corp. of Okla., Inc.*, 152 P.3d 165, 175 (Okla. 2006).   Despite this, the Complaint lumps all Defendants together as if they are the same legal entity.  This is improper.  Because the Complaint fails to allege that any single Defendant is about to do something that will allegedly harm any Plaintiff, the Complaint should be dismissed. [10]

Presumably, Plaintiffs believe lumping is acceptable here because they sued each Defendant "independently and as alter ego and/or agent of each of the other Defendants to this action."  (Complaint, ¶¶ 13-21).  But those are just conclusions that should not be accepted as true.  The Complaint is devoid of any well-pleaded allegations suggesting

---

[9] Although this statement was made in the qualified immunity context, other district courts in this circuit have applied the same rule outside of that context.  *See, e.g., Pena v. Greffet*, 922 F. Supp. 2d 1187, 1253-54 (D.N.M. 2013) (noting the same Rule 12(b)(6) standard applies in qualified immunity and other cases); *Thornton v. PPG Indus., Inc.*, No. CIV-11-252-RAW, 2011 WL 4528508, at *1 (E.D. Okla. Sept. 26, 2011) (unpublished).

[10] In the interest of avoiding unnecessary litigation over tertiary issues, Defendants advise the Court and Plaintiffs that Defendant Kingfisher Wind, LLC is the entity that holds the wind leases and intends to build the wind turbines in question.

Defendants are alter egos or agents of each other. *See, e.g., Chieftain Royalty Co. v. Dominion Okla. Tex. Exploration & Prod., Inc.*, No. CIV-11-344-R, 2011 WL 9527717, at *2 (W.D. Okla. July 14, 2011) (unpublished order dismissing alter ego claim because allegations that the defendant "'conducted all the business of its subsidiary' and that the 'entities were organized and controlled' such 'that they are alter egos of each other'" were insufficient). Therefore, the Complaint should be dismissed.

> **B.** **Plaintiffs' anticipatory nuisance claim should be dismissed because the Complaint does not plausibly suggest any Plaintiff is likely to suffer substantial, irreparable harm.**

Count I of Plaintiffs' Complaint asserts a claim for anticipatory private nuisance. Plaintiffs seek to enjoin construction of the proposed wind farm altogether. Unsurprisingly, the circumstance are rare which justify abating a lawful business before it even begins operating, and the Complaint does not plausibly suggest those extraordinary circumstances are present here. After a brief overview of Oklahoma nuisance law, the specific shortcomings of the Complaint will be analyzed in detail.

> **1.** **Overview of Oklahoma nuisance law.**

In Oklahoma, nuisance "consists in unlawfully doing an act, or omitting to perform a duty, which act or omission annoys, injures, or endangers the comfort, repose, health or safety of others; or, in any way renders other person insecure in life, or in the use of property." *Briscoe v. Harper Oil Co.*, 702 P.2d 33, 36 (Okla. 1985) (paraphrasing 50 Okla. Stat. § 1). Additionally, it has long been settled the injury caused by the alleged nuisance must be substantial and not "fanciful or imaginary, nor such as to result in a trifling annoyance, inconvenience, or discomfort which may affect those who possess too

sensitive a nature or too fastidious a taste." *Bixby v. Cravens*, 156 P. 1184, 1187 (Okla. 1916) (per curiam) (quotation omitted).

The field of nuisance is divided into two general categories:  public nuisance and private nuisance.  A public nuisance is one that affects an entire community or large group of persons at the same time, 50 Okla. Stat. § 2, whereas a private nuisance is an activity that unreasonably or wrongfully interferes with an individual's use and enjoyment his or her own property.  50 Okla. Stat. § 3; *Nichols v. Mid-Continent Pipe Line Co.*, 933 P.2d 272, 276-77 & n.15 (Okla. 1996).  Plaintiffs have only asserted a claim for private nuisance in this case.  (Complaint, ¶ 64).

Besides the distinction between public and private nuisances, there are two other types of nuisance:  nuisance per se and nuisance per accidens (or in fact).  Only the latter is implicated here.  A nuisance per se is an activity that is "a nuisance at all times and under any circumstances, regardless of location or surroundings"—that is, an activity prohibited by law. *McPherson v. First Presbyterian Church of Woodward*, 248 P. 561, 564 (Okla. 1926) (quotation omitted).  A nuisance in fact, on the other hand, is an otherwise lawful activity that may or may not be a nuisance depending on "its location and surroundings, the manner of its conduct, or other circumstances." *Id.*

There is no dispute that the construction and operation of a wind farm is generally a lawful activity. *See generally* 17 Okla. Stat. § 160.12(2) ("Promotion of the development of wind energy resources is important to the economic growth of the state."); 60 Okla. Stat. 820.1 (authorizing wind leases).  Indeed, courts have recognized that wind farms advance the public interest in promoting energy independence and in

12

developing clean, renewable energy sources. *See Osage Nation ex rel. Osage Minerals Council v. Wind Capital Group, LLC*, No. 11-CV-643-GKF-PJC, 2011 WL 6371384, at *11 (N.D. Okla. Dec. 20, 2011) (unpublished) ("Congress has articulated the public policy that our nation should incorporate clean energy as a necessary party of America's future and it is essential to securing our nation's energy independence and decreasing green house emissions." (quoting *W. Watersheds Project v. Bureau of Land Mgmt.*, 774 F. Supp. 2d 1089, 1103 (D. Nev. 2011)). As a result, a wind farm cannot be a nuisance unless its location or manner of operation substantially and unreasonably interferes with another's use and enjoyment of his or her property.

Further, in order to abate a lawful business, one must do more than suggest the activity will be a nuisance. Plaintiffs must prove by clear and convincing evidence that they will suffer *irreparable injury* if development of the wind farm is not enjoined. *O'Laughlin v. City of Ft. Gibson*, 389 P.2d 506, 509 (Okla. 1964) (quotation omitted). "[A] mere fear or apprehension of injury is insufficient." *Burlington N. & Santa Fe Ry. Co. v. Grant*, 505 F.3d 1013, 1023 (10th Cir. 2007) (quotation omitted). As long as the proposed wind farm could be situated in such a fashion or operated in a manner that would not irreparably injure Plaintiffs, abatement is inappropriate. *See Sharp v. 251st Street Landfill, Inc.*, 925 P.2d 546, 552 (Okla. 1996). The Complaint does not plausibly suggest Plaintiffs can make this showing here.

### 2. *Analysis of the Complaint.*

The focus of the present inquiry is on the likelihood Plaintiffs will suffer substantial irreparable harm. As a result, Plaintiffs' allegations that their property values

will be diminished should be disregarded.  That alleged injury is not an *irreparable* injury because it can be compensated by money damages in the unlikely event Plaintiffs are able to prove they are entitled to such compensation.  *See generally Combs v. Shelter Mut. Ins. Co.*, 551 F.3d 991, 1002 (10th Cir. 2008) (citing *Coxcom, Inc. v. Okla. Secondary Sch. Athletic Ass'n*, 143 P.3d 525, 529 (2006)).

Rather, the dispositive question here is whether the Complaint plausibly suggests the proposed wind farm or any turbine in it is likely to adversely affect any Plaintiffs' health or safety.  Despite its repeated reference to the adverse health effects wind turbines allegedly pose, the Complaint fails to do so.  The Complaint makes the following relevant allegations:

- Plaintiffs live and own property within three (3) miles of the location where a turbine will be built. (Complaint, ¶ 36);

- Before repealing Ordinance 591, the City of Piedmont found that noise emissions from wind turbines cause unspecified health effects that are "observable up to three (3) miles from the system, with the effects being greatest within one (1) mile from the system."  (Complaint, ¶ 29(f));

- Industry standards provide that no home should be built within 1500 feet of a turbine of the size involved here to protect against the risk of a catastrophic mechanical failure. (Complaint, ¶¶ 41-42);

- Mr. Rick Huffstutlar, who is not a party in this case and lives "in the middle of the Canadian Hills Wind Farm" between Okarche and Calumet, suffers from a heart condition called supraventricular tachycardia that has been allegedly aggravated by the wind turbines.  Additionally, Mr. Huffstutlar has experienced "shadow flicker," suffers from headaches, has trouble sleeping, and wants to move away from the wind farm.  (Complaint, ¶¶ 45-48);

- The rotation of the wind turbine blades produces "infra and low frequency sounds that are inaudible to the human ear," and exposure to these low-frequency sounds allegedly impairs children's learning abilities, disrupts one's ability to "think,

remember, or concentrate," and causes "sleeping disorders, headaches, mood disorders, tinnitus, and vestibular problems." (Complaint, ¶¶ 29(b)-(e), 49-51);

- The rotating blades cause "flickering of sunlight commonly referred to as shadow flicker," that "has been reported to cause seizures in certain individuals" and may aggravate the alleged effects of low-frequency sound mentioned above. (Complaint, ¶¶ 29(a), 52).

Assuming these allegations are true and construing them in the light most favorable to Plaintiffs, the Complaint suggests only that some wind turbines *might* adversely impact *someone's* health. The Complaint does not plausibly suggest this proposed wind farm or any turbine in it is *likely* to substantially affect the health or safety of any of *these Plaintiffs*. *Cf. Ridge at Red Hawk, L.L.C. v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007) ("[T]he mere metaphysical possibility that *some* plaintiff could prove *some* set of facts in support of the pleaded claims is insufficient; the complaint must give the court reason to belief that *this* plaintiff has a reasonable likelihood of mustering factual support for *these* claims." (emphasis original)).

Although the Complaint alleges that low-frequency noise from wind turbines may cause headaches, dizziness, sleep disorders, or other health effects, it does not specify the frequency or severity at which those alleged symptoms occur, nor at what range from a turbine those effects are observed. Although there is a conclusory reference that some unspecified health effects have been observed up to three miles from a turbine, the Complaint does not identify what those alleged health effects are, how likely they are to occur, or how prevalent or severe the alleged effects will be. Absent such allegations, the Complaint does not plausibly suggest these Plaintiffs are likely to suffer anything more than a "trifling annoyance, inconvenience, or discomfort." *Bixby*, 156 P. at 1187.

15

Next, the allegations pertaining to the alleged 1500 foot set-back is a red herring. Plaintiffs do not allege any turbine will be placed within 1500 feet of their home or property, nor does the Complaint contain any allegation suggesting a mechanical failure is likely or specify how any such failure would interfere with their property interests. *Cf. City of McAlester v. King,* 317 P.2d 265 (Okla. 1957)(finding that allegations including fear of collapse or that objects will fall from a proposed water tower were insufficient to state a claim for nuisance where there is no allegation that the water tower was wrongfully or negligently constructed.) Moreover, Plaintiffs' allegation that Defendants will effectively "take" all property within 1500 feet of each turbine (Complaint, ¶ 43) is irrelevant to this anticipatory nuisance action because any such interference, if proven, could be compensated by money damages.

Additionally, the allegations pertaining to Mr. Huffstutler do not show that any Plaintiff is likely to be irreparably harmed. The Complaint suggests that wind turbines near Calumet (in a completely different wind farm) have aggravated Mr. Huffstutler's heart condition, although the Complaint does not allege how close Mr. Huffstutler lives to the wind turbines near Calumet or that the turbines near Mr. Huffstutler's home use the same technology to be used in the wind farm at issue in this case. Mr. Huffstutler is not a Plaintiff in this case, and the Complaint does not allege that any Plaintiff will live in the same proximity to wind turbines as does Mr. Huffstutler, nor does the Complaint suggest any Plaintiff has any similar medical condition that could be aggravated by the proposed wind farm.

16

Further, the allegation that "shadow flicker" has reportedly caused "seizures in certain persons" does not plausibly suggest Plaintiffs will suffer seizures if the wind farm is not enjoined. The Complaint does not allege that any Plaintiff has a propensity to suffer seizures or is otherwise one of the "certain persons" who may be affected by shadow flicker. Further, the Complaint is devoid of any detail as to the distance at which seizures are allegedly caused by wind turbines. Shadow flicker is only observable as far as the shadow of a turbine may extend, which in no way would be 3 miles from a turbine.

Finally, these deficiencies are compounded with respect to the claims by any Plaintiff—whether named or absent—who merely owns land in the relevant area but does not reside there. Individuals who do not reside and are not present in the relevant area will not be exposed to the alleged adverse health effects from low-frequency sound or shadow flicker. Therefore, to the extent the Complaint asserts claims on behalf of mere landowners, the claims by or on behalf of such persons should be dismissed.

In sum, the allegations in the Complaint do not suggest Plaintiffs have anything more than "a mere fear or apprehension of injury." *Sharp*, 925 P.2d at 549. Because the Complaint fails to plausibly suggest that any Plaintiff will likely suffer irreparable harm if the proposed wind farm is not enjoined, Plaintiffs' anticipatory nuisance claim should be dismissed.

### C.   Plaintiffs' anticipatory trespass claim should be dismissed because the Complaint fails to identify an anticipated or actual physical invasion of Plaintiffs' property.

Count II of Plaintiffs' Complaint asserts a claim for anticipatory trespass. In addition to the Complaint's failure to plausibly suggest Plaintiffs will suffer irreparable

injury if an injunction is not issued, Plaintiffs' anticipatory trespass claim suffers from a more fundamental deficiency.  A trespass is an actual, physical invasion of the real property of another without any right or invitation.  *Williamson v. Fowler Toyota, Inc.*, 956 P.2d 858, 862 (Okla. 1998).  Presumably, an "anticipatory" trespass is a physical invasion that is likely to happen in the near future.  Here, however, Plaintiffs allege only that "[n]oise from the operation of Defendants' proposed [turbines] will intentionally and unlawfully invade and interfere with Plaintiffs' properties without Plaintiffs' consent or permission." (Complaint, ¶ 67).  Noise is not a physical invasion.  *See Beal v. W. Farmers Elec. Co-op.*, 228 P.3d 538, 541 (Okla. Civ. App. 2010).  Therefore, Plaintiffs' anticipatory trespass claim should be dismissed.

## III.   The Class Action Allegations Should be Dismissed.

The Rule 12(b)(6) standards discussed above apply to class action allegations as well.  *See, e.g., Cox v. Allstate Ins. Co.*, No. CIV-07-1449-L, 2009 WL 2591673, at ** 3-4 (W.D. Okla. Aug. 19, 2009) (unpublished order dismissing class action allegations); *Roberts v. Target Corp.*, No. CIV-11-951-HE, 2012 WL 2357420 (W.D. Okla. June 20, 2012) (unpublished order striking class action allegations).  Thus, the Complaint must allege enough factual information to show that class treatment may be appropriate.  Conclusory allegations that merely parrot Rule 23's requirements are insufficient.  *Williams v. CitiMortgage, Inc.*, No. CIV-13-354-M, 2014 WL 1406601, *3 (W.D. Okla. April 10, 2014) (unpublished).

In this case, the class action allegations should be dismissed because the proposed class definition is not presently ascertainable and Plaintiffs have not pleaded facts suggesting the proposed class members are so numerous that joinder is impracticable.

### A.     The proposed class is not presently ascertainable.

Implicit in Rule 23 is the requirement that the proposed class be presently ascertainable.[11]  *John v. Nat'l Sec. Fire & Cas. Co.*, 501 F.3d 443, 445 (5th Cir. 2007). This requires the class to be "defined with reference to objective criteria."  *Hayes v. Wal-Mart Stores, Inc.*, 725 F.3d 349, 355 (3d Cir. 2013).  A class definition that is imprecise or depends on resolution of the merits is not ascertainable.  *See generally Crosby v. Social Sec. Admin.*, 796 F.2d 576, 580 (1st Cir. 1986) (proposed class was improper because members were impossible to identify absent individualize fact finding); *Romberio v. Unumprovident Corp.*, 385 F. App'x 423, 431 (6th Cir. 2009) (unpublished) (same).

The Individual Plaintiffs seek to represent the following proposed class:

> All persons owning real property in Kingfisher and Canadian Counties Oklahoma who reside on or own property within three (3) miles of a planned Industrial Wind Turbine to be constructed by Defendants and have not waived by agreement any nuisance or trespass claim against Defendants.  This class includes such individuals regardless of whether they reside on or own property within the municipal boundaries of a town or city.

(Complaint, ¶ 54).

---

[11] The Tenth Circuit has held that a class based on Rule 23(b)(2) does not need to be identifiable.  *See Shook v. El Paso County*, 386 F.3d 963, 972 (10th Cir. 2004).  In this case, however, Plaintiffs apparently intend to rely on Rule 23(b)(1) and/or (b)(3).  *See* Complaint, ¶ 59 (parroting language from Rule 23(b)(1) & (b)(3)).  Therefore, Plaintiffs' proposed class must be presently ascertainable or identifiable.

This proposed class is not presently ascertainable for two reasons:  First, the "planned" wind turbines do not as yet have any definite location.  As a result, it is impossible to determine who is in the proposed class and who is not, and a person could be within the proposed class today but out of it tomorrow.  Second, the Court will have to conduct individualized fact-finding to determine whether the proposed class members have "waived by agreement any nuisance or trespass claim against Defendants." Therefore, the proposed class is improper and the class allegations should be dismissed.

**B.    The complaint does not plausibly suggest the prospective class members are so numerous that joinder is impracticable.**

A necessary prerequisite to class treatment is that Plaintiffs must show "the class is so numerous that joinder of all members is impracticable."  Fed. R. Civ. P. 23(a)(1). This requirement reflects the legal system's preference for individual litigation over representative litigation.  1 William B. Rubenstein et al., *Newberg on Class Actions* § 3:11, p.186 (5th ed.).  The Complaint here simply parrots Rule 23(a)(1)'s language without adding any further factual enhancement.  (Complaint, ¶ 55).  Additionally, the Complaint fails to specify the approximate number of people who own land in the relevant area.  In fact, nothing in the Complaint makes any mention of how large the proposed class area is.  As a result, it cannot be inferred that land owners in the proposed class are so numerous that joinder is impracticable.  Therefore, the class allegations should be dismissed.

**<u>Conclusion</u>**

Plaintiffs seek to enjoin the construction and operation of a lawful and beneficial business before the project even breaks ground.  To do so, Plaintiffs must plead and prove facts showing their health or safety will be substantially affected if the Court does not intervene.  As discussed above, Plaintiffs' Complaint fails to plead sufficient facts to show Plaintiffs are entitled to the relief they seek.  Additionally, the Complaint fails to plausibly suggest that class treatment may be appropriate.  Therefore, Defendants request the Court dismiss the Complaint in its entirety and award Defendants any other relief the Court determines to be appropriate.

Submitted this 23rd day of September, 2014.

*/s/ J. Todd Woolery*
Timothy J. Bomhoff, OBA #13172
J. Todd Woolery, OBA #18882
Jodi Cole, OBA #22107
Patrick L. Stein, OBA #30737
MCAFEE & TAFT A Professional Corporation
Tenth Floor, Two Leadership Square
211 North Robinson
Oklahoma City, Oklahoma 73102-7103
Telephone:  (405) 235-9621
Facsimile:  (4050 235-0439
tim.bomhoff@mcafeetaft.com
todd.woolery@mcafeetaft.com
jodi.cole@mcafeetaft.com
patrick.stein@mcafeetaft.com

**Attorneys for Defendants Apex Wind Construction, LLC, Apex Clean Energy, Inc., Apex Clean Energy Holdings, LLC, Kingfisher Wind, LLC, Kingfisher Transmission, LLC, Campbell Creek Wind, LLC, and Campbell Creek Wind Transmission, LLC**

## CERTIFICATE OF SERVICE

      I hereby certify that on September 23, 2014, the above pleading was electronically transmitted to the Clerk of the Court using the ECF System for filing and transmittal of a Notice of Electronic Filing to the following ECF registrants:

          Dallas L.D. Strimple
          Jason B. Aamodt
          Deanna L. Hartley
          Krystina E. Phillips
          Indian and Environmental Law Group, PLLC
          1723 East 15th Street, Suite 100
          Tulsa, OK  74104
          Attorneys for Plaintiffs

                                  */s/ J. Todd Woolery*
                                    J. Todd Woolery