## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| 1. | **TERRA WALKER,** | ) |
| 2. | **CHEYENNE WARD,** | ) |
| 3. | **JULIE HARRIS,** | ) |
| 4. | **JANELLE GRELLNER,** | ) |
| 5. | **ELISE KAY KOCHENOWER,** | ) |
| 6. | **KARRI PARSON,** | ) |
| 7. | **CINDY SHELLEY, and** | ) |
| 8. | **OKLAHOMA WIND ACTION** | ) |
| | **ASSOCIATION, an Oklahoma** | ) |
| | **Corporation,** | ) |
| | | ) |
| | **Plaintiffs,** | ) Case No. 14-cv-914-D |
| | | ) |
| **v.** | | ) |
| | | ) |
| 1. | **APEX WIND CONSTRUCTION, LLC,** | ) |
| 2. | **APEX CLEAN ENERGY, INC.,** | ) |
| 3. | **APEX CLEAN ENERGY HOLDINGS,** | ) |
| | **LLC,** | ) |
| 4. | **KINGFISHER WIND, LLC,** | ) |
| 5. | **KINGFISHER WIND LAND** | ) |
| | **HOLDINGS, LLC,** | ) |
| 6. | **KINGFISHER TRANSMISSION, LLC,** | ) |
| 7. | **CAMPBELL CREEK WIND, LLC,** | ) |
| 8. | **CAMPBELL CREEK WIND** | ) |
| | **TRANSMISSION, LLC,** | ) |
| | | ) |
| | **Defendants.** | ) |

## PLAINTIFFS' SECOND AMENDED COMPLAINT

COME NOW Plaintiffs Terra Walker, Cheyenne Ward, Julie Harris, Janelle

Grellner, Elise Kochenower, Karri Parson, Cindy Shelley, and Oklahoma Wind Action

Association (herein collectively "Plaintiffs"), for their claim for relief against Defendants

APEX Wind Construction, LLC, APEX Clean Energy, Inc., APEX Clean Energy

Holdings, LLC, Kingfisher Wind, LLC, Kingfisher Wind Land Holdings, LLC, Campbell Creek Wind, LLC, and Campbell Creek Wind Transmission, LLC (herein collectively "Defendants") and allege and state as follows:

## NATURE OF THE ACTION

1.      This action seeks to enjoin Defendants from creating a nuisance that will cause unreasonable inconvenience, interference, annoyance, adverse health effects, and loss of use and value of each Plaintiffs' properties, and the properties of Oklahoma Wind Action Association's (herein "OWAA") members.[1]  Additionally, Defendants' operations will result in a continuing trespass upon the properties of each Plaintiff's property, and the properties of OWAA's members.

## JURISDICTION AND VENUE

2.      This Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. § 1332.  Specifically, and as set forth more fully herein, the amount in controversy in this action exceeds seventy-five thousand dollars ($75,000.00) and Plaintiffs are all Oklahoma citizens while Defendants are all citizens of another state.

3.      Venue lies in this District pursuant to 28 U.S.C. § 1391 (b)(2), which states that a civil action may be brought in any judicial district in which a substantial part of the events occurred or where a substantial party of the property is situated.

---

[1]      Each reference to Plaintiffs' Properties or Plaintiff's Property should be read to include the properties of OWAA's members unless the reference is tied to a specific individual Plaintiff.

## PARTIES

### A.    *Individual Plaintiffs.*

4.    Plaintiff Terra Walker is a natural person who resides and owns property in Canadian County, Oklahoma and brings this lawsuit on behalf of herself.

5.    Plaintiff Cheyenne Ward is a natural person who resides and owns property in Canadian County, Oklahoma and brings this lawsuit on behalf of herself.

6.    Plaintiff Julie Harris is a natural person who resides and owns property in Canadian County, Oklahoma and brings this lawsuit on behalf of herself.

7.    Plaintiff Janelle Grellner is a natural person who resides and owns property in Canadian County, Oklahoma and brings this lawsuit on behalf of herself.

8.    Plaintiff Elise Kay Kochenower is a natural person who resides and owns property in Kingfisher County, Oklahoma and brings this lawsuit on behalf of herself.

9.    Plaintiff Karri Parson is a natural person who resides and owns property in Kingfisher County, Oklahoma and brings this lawsuit on behalf of herself.

10.    Plaintiff Cindy Shelley is a natural person who resides and owns property in Kingfisher County, Oklahoma and brings this lawsuit on behalf of herself.

### B.    *Oklahoma Wind Action Association.*

11.    Plaintiff OWAA is an Oklahoma Corporation, doing business primarily in Canadian and Kingfisher Counties in Oklahoma.

12.     Plaintiff OWAA is a voluntary membership organization made up primarily and substantially of individuals who reside in Canadian and Kingfisher Counties in Oklahoma who are concerned about, and likely to be adversely affected by,

3

Defendants' construction and operation of large Industrial Wind Energy Conversion Systems (herein "IWECS" or "Industrial Wind Turbines") that are the subject of this action. Specifically, nearly all of OWAA's over three-hundred twenty (320) members live and own property within the immediate vicinity, at least within three (3) miles, of Defendants' currently planned IWECS.

13.     Additionally, each of the Plaintiffs identified in paragraphs five (5) through (11) are board members of OWAA. Other Board Members live and own property within the immediate vicinity, at least within three (3) miles, of Defendants' currently planned IWECS. The Board controls the day-to-day operations of OWAA, while the general membership participates through periodic meetings where the membership directs the policy and direction of OWAA's actions.

14.     OWAA is funded by monetary donations from its individual members.

15.     OWAA was created by its members to advocate for the protection of human health and individual property values from the adverse effects of industrial wind turbines and their operation. As such, this lawsuit is germane to OWAA's purpose.

### C.     *Defendant Companies.*

16.     Defendant Apex Wind Construction, LLC, independently and as alter ego and/or agent of each of the other Defendants to this action, is a Delaware Limited Liability Company with a principal place of business in Charlottesville, Virginia, and is authorized to do business in Oklahoma. Defendant Apex Wind Construction, LLC's sole member is Defendant Apex Clean Energy Holdings, LLC, who is not a citizen of Oklahoma as noted in paragraph 18 *infra*.

4

17.    Defendant Apex Clean Energy, Inc., independently and as alter ego and/or agent of each of the other Defendants to this action, is a Virginia Corporation with a principal place of business in Charlottesville, Virginia, and is authorized to do business in Oklahoma.

18.    Defendant Apex Clean Energy Holdings, LLC, independently and as alter ego and/or agent of each of the other Defendants to this action, is a Delaware Limited Liability Company with a principal place of business in Charlottesville, Virginia, and is authorized to do business in Oklahoma.  Defendant Apex Clean Energy Holdings, LLC consists of sixty-eight (68) members whom are identified in its Sealed Second Amended Disclosure Statement [Doc. No. 66].   Upon information and belief, Plaintiffs' investigation, and Defendant's own Disclosure Statement, Defendant Apex Clean Energy Holdings, LLC's members are citizens of Delaware, New York, Virginia, West Virginia, Maryland, Utah, Texas, Louisiana, and the District of Columbia, and none are citizens of Oklahoma.[2]

19.    Defendant Kingfisher Wind, LLC, independently and as alter ego of each and/or agent of the other Defendants to this action, is a Delaware Limited Liability Company with a principal place of business in Charlottesville, Virginia, and is authorized to do business in Oklahoma.  At the onset of this action, Defendant Kingfisher Wind, LLC's sole member was Defendant Apex Clean Energy Holdings, LLC, who is not a citizen of Oklahoma as noted in paragraph 18 *supra*.  During the pendency of this action,

_____

[2]    Plaintiffs are not identifying the specific members of Defendant Apex Clean Energy Holdings, LLC pursuant to agreement with Defendants to protect the confidentiality of such members.

Defendant Kingfisher Wind, LLC's membership changed to the members identified in its Sealed Amended Disclosure Statement [Doc. No. 67], which identified that Defendant Kingfisher Wind, LLC, is a citizen of Connecticut and Delaware, and not a citizen of Oklahoma.[3]

20.     Upon information and belief, Kingfisher Wind, LLC, has also conducted business in Oklahoma under the names "Canadian County Wind, LLC" and "Canadian Hills Wind East, LLC."

21.     Defendant Kingfisher Wind Land Holdings, LLC, independently and as alter ego and/or agent of each of the other Defendants to this action, is a Delaware Limited Liability Company with a principal place of business in Charlottesville, Virginia, and is authorized to do business in Oklahoma.     Defendant Kingfisher Wind Land Holdings, LLC's members consist of MAP 2009, L.P. and MAP 2012, L.P.   Upon information and belief, and based upon Plaintiffs' investigation, neither MAP 2009, L.P. nor MAP 2012, L.P. are citizens of Oklahoma.

22.     Defendant Kingfisher Transmission, LLC, independently and as alter ego and/or agent of each of the other Defendants to this action, is a Delaware Limited Liability Company with a principal place of business in Charlottesville, Virginia, and is authorized to do business in Oklahoma Defendant Kingfisher Transmission, LLC's sole member is Defendant Kingfisher Wind, LLC, who is not a citizen of Oklahoma as noted in paragraph 19 *supra*.

---

[3]     Like with Defendant Apex Clean Energy Holdings, LLC, Plaintiffs are not specifically identifying Defendant Kingfisher Wind, LLC's members due to issues of confidentiality.

23.     Defendant Campbell Creek Wind, LLC, independently and as alter ego and/or agent of each of the other Defendants to this action, is a Delaware Limited Liability Company with a principal place of business in Charlottesville, Virginia, and is authorized to do business in Oklahoma.    Defendant Campbell Creek Wind, LLC's sole member is Apex GCL, LLC, whose sole member is Defendant Apex Clean Energy Holdings, LLC, who is not a citizen of Oklahoma as noted in paragraph 18 *supra*.

24.     Defendant Campbell Creek Wind Transmission, LLC, independently and as alter ego and/or agent of each of the other Defendants to this action, is a Delaware Limited Liability Company with a principal place of business in Charlottesville, Virginia, and is authorized to do business in Oklahoma.    Defendant Campbell Creek Wind Transmission, LLC's sole member is Defendant Campbell Creek Wind, LLC, who is not a citizen of Oklahoma as noted in paragraph 23 *supra*.

## BACKGROUND

25.      Under current Oklahoma and Federal law, wind energy production is essentially an unregulated industry.

26.     Wind energy is produced through the use of large IWECS.  Each IWECS consists, generally, of three blades connected to a generator that sits atop of a tower.  The tower, due to its size, requires a large foundation to stay upright.

27.     Upon information and belief, in 2008, Defendants began to negotiate, in secret, lease agreements with landowners in Canadian and Kingfisher counties for the construction, operation and maintenance of IWECS for the production of electricity (herein the "wind farm").

28.     Many citizens of Canadian and Kingfisher counties did not become aware of the wind farm's development until 2012.  Citizens voiced their concerns to local municipalities regarding adverse health and economic effects caused by IWECS to neighboring landowners.

29.     In addition to local municipalities, the citizens of Canadian and Kingfisher counties have voiced their concerns to county government officials and the state legislature to no avail, leaving this Court to be their last resort to protect themselves from Defendants' intrusive IWECS.

## I.     Response by the City of Piedmont.

30.     On December 17, 2012, responding to citizen concerns, the City of Piedmont adopted Ordinance 581 that regulated the production of energy from wind energy conversion systems within the municipal limits of the City of Piedmont.  The Ordinance prohibited IWECS within the municipal limits of the City of Piedmont.

31.     Also, on August 26, 2013, responding to concerns that the IWECS planned to be constructed outside the City's municipal limits would cause adverse heath and economic effects within the City's municipal limits and acting pursuant to 50 Okla. Stat. § 16, the City of Piedmont adopted Ordinance 591 which declared the construction, maintenance and modification of industrial wind energy conversion systems within three (3) miles of the municipal limits of the City of Piedmont, or within the municipal limits of the City of Piedmont, to constitute a public nuisance.

32.     In declaring the nuisance, the City reviewed scientific studies regarding the adverse impacts of IWECS and issued finding that:

8

(a)     Rotating blades from IWECS create a "shadow flicker" that causes adverse effects to human health.

(b)     IWECS emit high levels of noise, much of which has a substantial low-frequency component that is undetectable to the human ear (infrasound).

(c)     Noise emissions from IWECS disturb sleep and cause daytime sleepiness and impair mental health.  These negative health effects have led to a worsening sleep scores [*sic*], increased instances of insomnia, increased stress, stroke, heart failure immune system problems, interference with balance, dizziness, vertigo, nausea, ringing in the ears, breathing problems, abdominal and chest pain, urinary problems, effects on speech, and headaches.

(d)     High noise environments negatively impact learning in young children, making it hard to concentrate, frustrating the individual, and making it more difficult to communicate with others.

(e)     The high level of variance in noise emissions from IWECS makes the noise more annoying and harmful than other environmental noises.

(f)     Health effects related to noise emissions from IWECS are observable up to three (3) miles from the system, with the effects being greatest within one (1) mile from the system.

(g)     A majority of individuals living within one (1) mile from IWECS wish to move away from the system after its installation and operations have begun due to noise emissions.

(h)     Visibility of IWECS leads to increased annoyance from noise emissions.

(i)     On May 31, 2013, a tornado struck an IWECS near El Reno, Oklahoma and a blade from the IWECS severely damaged a nearby daycare.

(j)     The presence of IWECS have reportedly lowered nearby property values up to forty-three percent (43%).  Appraisers have recommended that companies installing IWECS be required to purchase all property within two (2) miles of such

a IWECS installation.

33.     On December 9, 2013, the City of Piedmont repealed Ordinance 591 after reaching an agreement with Defendants regarding the siting of IWECS outside the City's municipal limits.

34.     Following its agreement with the City of Piedmont, Defendants began to negotiate additional lease agreements with land owners in Canadian and Kingfisher counties that increased the density of IWECS in the counties, raising greater concerns from the citizenry.

## II.     <u>Response by the City of Kingfisher.</u>

35.     Many of the new lease agreements described above were in Kingfisher County, Oklahoma, and near the City of Kingfisher.

36.     In response to the new lease agreements, citizens in and around the City of Kingfisher took their concerns to the Kingfisher City Council.  The Kingfisher City Council began to research available options to protect its citizenry from the adverse affects that Defendants' IWECS would cause the community.

37.     Concerned about any action the City of Kingfisher would take, on April 24, 2014, Defendants made a presentation to the Kingfisher City Council regarding adverse health and economic effects caused by IWECS.  Recognizing that IWECS raise real health concerns, an alleged expert on behalf of Defendants indicated that health concerns are resolved by ensuring IWECS are constructed a certain distance back from non-participating landowners.

38.     Defendants are in the process of negotiating an agreement with the City of Kingfisher regarding how far Defendants' IWECS must be set back from the City of Kingfisher's city limits.

**III.     Plaintiffs.**

39.     The individual Plaintiffs live and own property within the immediate vicinity, at least within three (3) miles, of Defendants' currently planned IWECS.

40.     Plaintiff OWAA represents a large group of landowners in Canadian and Kingfisher Counties, Oklahoma, who live and own property within the immediate vicinity, at least within three (3) miles, of Defendants' currently planned IWECS.

**IV.     Defendants' Planned Wind Energy Installation in Canadian and Kingfisher Counties, Oklahoma.**

41.     Upon information and belief, Defendants completed financing on the first phase of their wind farm in Canadian and Kingfisher counties during October 2014.

42.     Upon information and belief, Defendants have begun construction on the first phase of their wind farm in Canadian and Kingfisher counties on or about March 16, 2015.

43.     Upon information and belief, Defendants intend to construct IWECS that are approximately five hundred (500) feet in height.  For reference, this is approximately five-eighths (5/8) the size of Devon Tower in downtown Oklahoma City, Oklahoma.

44.     Upon information and belief, Industrial Wind Turbine manufacturers recommend a minimum setback or safety zone of three (3) times turbine height—in this case fifteen hundred (1500) feet—between any home and an Industrial Wind Turbine for

safety purposes in case of catastrophic failure of one or more components, not to protect against adverse effects resulting from noise.

45.     As a result, Industrial Wind Turbines, by their own safety standards, create a *de facto* "no-build" zone in a fifteen hundred foot (1500) radius surrounding the Turbine.  In many instances, this "no-build" zone overlaps with the property of landowners who have no agreement with Defendants.

46.      This invasion of Plaintiffs' right to use and enjoy their property normally requires Defendants to obtain an easement from the landowner that restricts their ability to construct upon any property within a certain distance of the Industrial Wind Turbines.  Here, Defendants have made agreements with local municipalities not to construct any Industrial Wind Turbines within fifteen hundred (1500) feet of a non-participating landowners' residential structure.   As a result, Defendants' Industrial Wind Turbines unilaterally impose this 1500 foot "no build zone" without the neighboring landowners' consent and thereby interfere with Plaintiffs' ability to use their property as they wish safely.

47.     Defendants have undertaken no effort to obtain such easements and Plaintiffs will be left with a cloud upon their titles.

48.     Another serious concern regarding the Defendants' Industrial Wind Turbines is "ice throw."   In winter months ice can accumulate in large amounts on turbine blades.  When the Industrial Wind Turbines later activate and begin spinning, this accumulated ice will be thrown off the blade and to the ground in an average of three (3) to four (4) feet sized chunks.  Upon information and belief, these chunks of ice will

normally be thrown up to 1000 feet from the Industrial Wind Turbine.  This is not a specious concern as Industrial Wind Turbine manufacturers admit and warn that rotating turbine blades may propel ice fragments up to several hundred meters if conditions are right.

49.     Additionally, there have been reports where actual pieces of the Industrial Wind Turbines will break off as a result of mechanical failures and be thrown as far as a mile from the Industrial Wind Turbine and onto non-participating landowners' properties and homes causing serious damage.  Upon information and belief, normally such ejections as the result of mechanical failure land within sixteen hundred (1600) feet of the Industrial Wind Turbine.

**V.     Defendants' Other Wind Energy Installations.**

50.     Within the past several years, Defendants constructed the Canadian Hills Wind Farm between the City of Okarche, Oklahoma and Calumet, Oklahoma in Northwestern Canadian County, Oklahoma.

51.     Tammy Huffstutlar and Rick Huffstutlar live outside Calumet, Oklahoma, in the middle of the Canadian Hills Wind Farm.  Mr. Huffstutlar has supraventricular tachycardia, a heart condition that he has been on medication for over eight (8) years.  If not kept in control, supraventricular tachycardia will make the heart race until the individual has a heart attack.

52.     Since the Canadian Hills Wind Farm began operations, Mr. Huffstutlar's medication had to be increased to control his supraventricular tachycardia issues.  When Mr. Huffstutlar leaves the area, to an area without IWECS, his heart issues lessen and he

has to adjust his dosage of medication.  As a result, in order to live at home he has been prescribed such a high dosage of medication that it hinders his work and keeps him from living a normal life.

53.    In addition to Mr. Huffstutlar's heart issues, the Huffstutlars have experienced "shadow flicker" (described below), noise, and other adverse health effects such as headaches, issues with air pressure, and trouble sleeping.  As a result, the Huffstutlars plan to sell their home—likely at a diminished amount—to get away from Defendants' Wind Farm.

## ADVERSE HEALTH EFFECTS

54.    The blades of operating IWECS can spin at speeds of up to eighty (80) meters per second, or about 180 miles per hour.  In high winds, this rapid spinning produces sound, vibration and short duration disruptions (pulsations) in air pressure as blades move through turbulent in-flow air.  Additionally, the operating IWECS emit infra and low frequency sounds that are inaudible to the human ear, but have a long history of causing adverse effects to the human body and mind. The infra and low frequency sound is caused by both in-flow air turbulence and also as a result of the blade passing in front of the tower at the bottom of the rotation.  The blade/tower interaction produces a pulse of sound with a rapid rise time and short duration that results in a dynamically modulated tone at the blade-pass frequency (and its harmonics) in the frequency range below 1 Hz.

55.    Additionally, noise exposure from IWECS operations, even at relatively low levels, can cause developmental problems with the brain's ability to understand and learn language. Environmental noise created from IWECS impairs children's learning by

changing how they process language sounds. The noise also deteriorates the ability—in both children and adults—to properly think, remember, or concentrate during exposure.

56.     The infrasonic noise generated by IWECS also causes sleeping disorders, headaches, mood disorders, tinnitus, and vestibular problems.

57.     The rotation of IWECS blades causes flickering of sunlight, commonly referred to as "shadow flicker." Exposure to such "shadow flicker" has been reported to cause seizures in certain individuals.   Additionally, such "shadow flicker" further enhances stress induced health effects, such as those caused by infrasonic noise from IWECS.

## CLAIMS AT LAW AND IN EQUITY

### COUNT I
### ANTICIPATORY NUISANCE

58.     Plaintiffs incorporate by reference and restate all allegations of the preceding paragraphs as if fully set forth herein.

59.     The operation of Defendants' proposed IWECS will unlawfully subject Plaintiffs to unreasonable inconvenience, interference, annoyance, adverse health effects, and loss of use and value of their property.

60.     The operation of Defendants' proposed IWECS will constitute a private nuisance pursuant to 50 Okla. Stat. § 3.  Such private nuisance and the injuries caused thereby will be substantial, tangible, continuing, and both temporary and permanent.

61.     Plaintiffs are therefore entitled to equitable relief in the form of appropriate injunctive relief (valued in excess of $5,000,000.00) as a result of eventual operation of Defendants' proposed IWECS.

## COUNT II
## ANTICIPATORY TRESPASS

62.     Plaintiffs incorporate by reference and restate all allegations of the preceding paragraphs as if fully set forth herein.

63.     The operation of Defendants' proposed IWECS will intentionally and unlawfully invade and interfere with Plaintiffs' properties without Plaintiffs' consent or permission.

64.     For instance, the operation of Defendants' IWECS will result in ice being thrown onto Plaintiffs' properties, and the properties of OWAA's members, and causing damage.  This trespass will continue from year to year.  As such, Plaintiffs are entitled to enjoin such a trespass from occurring.

65.     Additionally, as mentioned above, Defendants' IWECS will result in parts from the Industrial Wind Turbines being thrown onto Plaintiffs' properties, and the properties of OWAA's members, and causing damage as a result of mechanical failures. This trespass will continue from year to year.  As such, Plaintiffs are entitled to enjoin such a trespass from occurring.

66.     Plaintiffs are therefore entitled to equitable relief in the form of appropriate injunctive relief (valued in excess of $5,000,000.00) as a result of eventual operation of Defendants' IWECS.

## COUNT III
## PERMANENT INJUNCTION

67.     Plaintiffs incorporate by reference and restate all allegations of the preceding paragraphs as if fully set forth herein.

68.     The operation of Defendants' proposed IWECS will constitute a private nuisance pursuant to 50 Okla. Stat. § 3.  Such private nuisance and the injuries caused thereby will be substantial, tangible, continuing, and both temporary and permanent. Accordingly, Plaintiffs are entitled to relief against Defendants.

69.     The operation of Defendants' proposed IWECS will unreasonably and continuously interfere with Plaintiffs' use and enjoyment of their property, and subject Plaintiffs to continuous and unreasonable inconvenience, annoyance and discomfort. These injuries are incapable of being cured by monetary compensation, thereby irreparably injuring Plaintiffs and their properties.

70.     The operation of Defendants' proposed IWECS will unreasonably and continuously interfere with Plaintiffs' use and enjoyment of their property, and subject Plaintiffs to continuous and unreasonable inconvenience, annoyance and discomfort. These injuries outweigh any injury to Defendants should an injunction be granted.

71.     Public Interest favors the rights of individuals to be secure in their own property and health, and far outweighs the public interest in unregulated wind energy.

### OTHER ISSUES

As set forth above, Defendants intend to begin construction of IWECS for their new wind farm in Canadian and Kingfisher Counties Oklahoma on or about March 16,

2015.  Plaintiffs are not requesting a preliminary injunction because the bond required would be cost-prohibitive in this case.  Accordingly, Plaintiffs respectfully request an accelerated schedule in this case to resolve the issues presented before Defendants begin construction.

## RESERVATION OF CLAIMS

Plaintiffs are not pursuing any claims for damages for actual personal injury and damage to property and hereby expressly reserve their right to pursue these and all other statutory environmental causes of action.

## PRAYER FOR RELIEF

WHEREFORE, together, Plaintiffs request this Court enjoin Defendants from constructing a nuisance that would injure Plaintiffs, enjoin Defendants from trespassing on Plaintiffs' properties, and award to Plaintiffs their costs and disbursements, including reasonable fees for attorneys and experts, as well as provide such other relief as may be just and proper under the laws of the State of Oklahoma.

## JURY DEMAND

Plaintiffs demand a trial by jury for all issues so triable.

Respectfully submitted this Wednesday, April 22, 2015,


/s/ Dallas L.D. Strimple
Deanna L. Hartley, OBA No. 19272
Krystina E. Phillips, OBA No. 30111
Dallas L.D. Strimple, OBA No. 30266
INDIAN AND ENVIRONMENTAL LAW GROUP, PLLC
1723 East 15th Street, Suite 100
Tulsa, Oklahoma  74104
Telephone:  (918) 347-6169
Facsimile:  (918) 398-0514

**ATTORNEYS FOR PLAINTIFFS**

## CERTIFICATE OF SERVICE

I hereby certify that on April 22, 2015, I electronically transmitted the foregoing to the Clerk of Court using the ECF System for filing and transmittal of a Notice of Electronic Filing to the following ECF registrants:

J Todd Woolery
Timothy J Bomhoff
Jodi C Cole
Patrick L Stein
Clayton D Ketter
Thomas G Wolfe

/s/Dallas L.D. Strimple
Dallas L.D. Strimple