# IN THE UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF OKLAHOMA

TERRA WALKER, et al.,                )
                                     )
            Plaintiffs,              )
                                     )
      v.                             )      Case No. CIV-14-914-D
                                     )
KINGFISHER WIND, LLC,                )
                                     )
            Defendant.               )

# **O R D E R**

The individual plaintiffs to this action[1] own land in Kingfisher and Canadian

Counties, within the State of Oklahoma. Plaintiff Oklahoma Wind Action

Association (OWAA) is an Oklahoma non-profit corporation. In this action,

OWAA, purportedly on behalf of itself and its members, and the individual

plaintiffs, bring tort claims for anticipatory nuisance against Defendant Kingfisher

Wind LLC (Kingfisher) stemming from its construction and maintenance of a wind

turbine farm in Kingfisher and Canadian Counties (hereinafter the Kingfisher

Wind Project or KWP).

Before the Court is Kingfisher's Motion for Summary Judgment on the issue

of OWAA's standing [Doc. No. 116] and Motion for Summary Judgment on the

Merits of Plaintiffs' Nuisance Claim [Doc. No. 117]. Plaintiffs have responded to

---

[1] The individual plaintiffs are Janelle Grellner, Terra Walker, Cheyenne Ward, Julie Harris, Elise Kay Kochenower, Karri Parson, and Cindy Shelley.

both motions [Doc. Nos. 136, 137]. The matter is fully briefed and at issue. The Court heard oral argument on the motions on September 27, 2016. Because standing is a threshold concern that involves the Court's power to hear a case, *Green v. Haskell County Bd. of Comm'rs*, 568 F.3d 784, 792 (10th Cir. 2009), the Court addresses Kingfisher's motion relating to that issue first.

## FACTUAL BACKGROUND[2]

Kingfisher is in the business of constructing and operating industrial wind turbines. At issue in the present case is the Kingfisher Wind Project, which consists of 149 wind turbines. Plaintiffs contend the wind farm's construction and operation constitutes an anticipatory nuisance; specifically, Plaintiffs allege the wind farm causes and/or will cause adverse health effects, emits noise at a disconcerting level, destroys the natural landscape, interferes with the use and enjoyment of their property, and otherwise constitutes an annoyance due to "shadow flicker" and the

---

[2] The following material facts are undisputed and viewed in the light most favorable to Plaintiffs. *Scott v. Harris*, 550 U.S. 372, 378 (2007). To determine which facts are not in genuine dispute, the Court disregarded any unsupported allegations, legal conclusions, or legal arguments couched as facts which appeared in either party's statement of material facts or response thereto. Undeveloped arguments, or those raised in a perfunctory manner, were also not considered. *Thomas v. Wichita Coca-Cola Bottling Co.*, 968 F.2d 1022, 1024-25 (10th Cir. 1992).

casting of light. Plaintiffs seek permanent injunctive relief in the form of a 1.7 mile setback of the wind farm from any property owned by a plaintiff.[3]

## I. THE OWAA

OWAA is a 501(c)(4) nonprofit corporation that was incorporated on February 10, 2014, six months before this lawsuit was filed. Its principal office is listed at the home address of Brent Robinson, its president. The governing documents of OWAA include its Certificate of Incorporation and Bylaws. On February 9, 2015 OWAA adopted its first set of bylaws, which provide that eligibility for membership extends to "[a]nyone who signs in at a meeting, signs a document for OWAA, or signs up for the email distribution list," unless the individual indicates they do not wish to be a member. On May 20, 2015, OWAA adopted a new set of bylaws that establish two tiers of membership: (1) voting members, who are members of the board of directors, and (2) non-voting members. OWAA's officers are: Brent Robinson (president); Plaintiff Terra Walker (vice president), and Plaintiff Karri Parson (treasurer). In addition, OWAA has nine directors: Plaintiff Cindy Shelley, Plaintiff Elise Kochenower, Plaintiff Julie Harris, Plaintiff Janelle Grellner, Plaintiff Cheyenne Ward, Steve Wittrock, Sharon Robinson, Beth Scheiber, and Jaclyn Rother.

---

[3] Although the exact distance of the setback requested by Plaintiffs has varied over the course of these proceedings, Plaintiff's response to Kingfisher's motion seeks a setback of 1.72 "statute miles." Pl. Resp. to Mot. for Summary Judgment at 6 [Doc. No. 137].

OWAA purports to represent 380 members, described as "a list of people who at one point had concerns" about the Kingfisher Wind Project or a list of "interested citizens." OWAA has no formal membership process; to become a member, one would only need to contact the group and ask to be added to the membership list. OWAA has no regularly scheduled meetings. When meetings do occur, OWAA records the "member" attendance by the names appearing on its sign-in sheet. Over half of the members of OWAA have properties located near the wind turbines at issue.

## II.    THE INDIVIDUAL PLAINTIFFS

### A.    Janelle Grellner

Ms. Grellner lives near the KWP; the closest turbine to her residence is .9 miles away. At her deposition, Grellner testified she could not hear the turbines while inside her home and that although the wind farm has not presently affected her health, she believes it is likely to do so in the future. Grellner worries about the wind farm's potential effects on children with special needs. Grellner also contends the wind farm's aesthetics disrupt the peace and tranquility of a rural environment and a person's potential future use of their property.

### B.    Terra Walker

Ms. Walker lives near the KWP; the closest turbine to her residence is .5 miles away. At her deposition, Walker testified that she has experienced "shadow

flicker" from the turbines on portions of her property.[4] Walker is concerned that the wind farm will adversely affect her children's health, but does not know how it will affect them. Walker alleges that she experiences pressure and headaches due to the wind turbines; however, she has not seen a doctor to address these symptoms. Walker also claims that her son's breathing issues, though not caused by the wind turbines, could be worsened by their presence.

### C.     Cheyenne Ward

Ms. Ward lives near the KWP; the closest turbine to her residence is .4 miles away. At her deposition, Ward stated she may have a heart condition that could be relevant to her claims. However, she has not asked her doctor whether her heart condition was caused or could be worsened by the wind turbines. She has not considered returning to the doctor for that purpose. Ward also complains of noise and sleep disturbance due to the wind turbines. Ward has not seen a doctor to address any symptoms she has allegedly experienced due to the wind turbines. Ward homeschools her children; an audiologist reported that background noise significantly deteriorates the clarity of speech for her son. According to the report, if Ward's son were in an environment where the background noise is significantly louder than speech, voices would sound even more muffled and his ability to learn would become increasingly more complicated. Although Ward experiences

---

[4] "Shadow flicker" describes the alternating pattern of light and dark that happens when wind turbine blades sweep through the path of sunlight.

shadow flicker on her property, it has not caused any adverse health effects. Ward does not know if she or her family has been affected by any infrasound emitting from the turbines.[5]

### D.    Julie Harris

Ms. Harris lives near the KWP; the closest turbine to her residence is .5 miles and has been operating since October 2015.  Harris testified she experiences "glint" from the sun's reflection off the turbine blades. Harris alleges noise from the wind turbines causes her dogs to constantly bark, which in turn causes her to have trouble sleeping. She also claims she suffers memory loss and dizziness as a result of the turbines. Harris, however, has not been seen by a doctor regarding her symptoms. Harris contends her son has had adverse health effects as a result of the turbines; however, there has not been any diagnosis which states his health problems are caused by the turbines.

### E.    Elise Kay Kochenower

Ms. Kochenower lives near the KWP; the closest turbine to her residence is 1.3 miles away. Kochenower testified she has experienced migraines for thirty-two years and believes they could be worsened by the turbines. Kochenower states that

---

[5] Infrasound describes wave phenomena that share the physical nature of sound, but with a range of frequencies below that of human hearing (about 20 hertz). *Williams v. Invenergy, LLC*, 13-CV-1391, 2016 WL 1725990, at *3 (D. Or. Apr. 28, 2016); *Protect our Communities Foundation v. Salazar*, No. 13-cv-575, 2013 WL 5947137, at *6 n. 2 (S.D. Cal. Mar. 25, 2014).

her worry about the wind turbines' potential harm causes her stress and could increase her shingles. Kochenower has not sought medical advice regarding what adverse health effect, if any, the wind turbines are having on her. Kochenower contends the wind turbines also hurt her son's ears. However, no medical provider has linked her son's problems to the wind turbines. Kochenower also fears her grandchildren could suffer adverse health effects from the turbines.

### F.    Karri Parson

Ms. Parson lives near the KWP; the closest turbine to her residence is 1.9 miles away. At her deposition, Parson testified that the wind turbines could affect her sleep. Parson also believes the wind turbines could affect her lupus, but she has neither discussed this matter with a medical doctor nor has she received any such diagnosis. Parson cannot hear the wind turbines from insider her home. She does not allege the wind turbines are causing any adverse health effects in her children.

### G.    Cindy Shelley

Ms. Shelley lives near the KWP; the closest turbine to her residence is 1.4 miles away. Shelley testified that she cannot hear the turbines from her home and she does not experience any shadow flicker. Shelley contends the turbines make her "queasy," though she has not consulted a doctor and does not intend to assert such a claim at trial. Instead, Shelley intends to assert an anticipatory nuisance claim on behalf of her seventeen year old daughter, who she contends suffers from

dizziness, nausea, seizures and migraines. Shelley's daughter, however, experienced seizures prior to the turbines' construction. Shelley states her daughter will be impacted by the turbines when she visits family; however, her daughter has not received a diagnosis that the wind turbines either cause or will contribute to her medical condition. Shelley also contends the turbines will destroy the landscape and present dangers during severe weather season.

## III.   EXPERT OPINIONS

In support of their contentions regarding the adverse health consequences surrounding the KWP, Plaintiffs retained Dr. Michael Nissenbaum and Richard James as expert witnesses. Dr. Nissenbaum, in sum, opines that that the closer one lives to a wind farm, daytime sleepiness increases, sleep quality decreases, and mental health diminishes. Dr. Nissenbaum's findings are related to a prior study in Maine; he did not conduct an investigation specific to the wind farm at issue in this case, nor did he conduct any medical examinations of the individual plaintiffs or review their medical records.

Among other things, Mr. James, who was retained to offer expert testimony on the effects of audible sound and infrasound, opines that properties within 1.5 miles of the wind farm will have sound levels greater than 35 "A-weighted decibels" (dBA), which will likely cause sleep disturbance and adverse health effects. James, however, is unable to identify which plaintiffs might experience

such effects until the wind farm is fully operational, and has not conducted an operational study.[6]

## STANDARD OF DECISION

Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Universal Underwriters Ins. Co. v. Winton*, 818 F.3d 1103, 1105 (10th Cir. 2016) (quoting Fed. R. Civ. P. 56(a)). The movant may make such a showing through the pleadings, depositions, other discovery materials, and affidavits. *Water Pik, Inc. v. Med-Systems, Inc*., 726 F.3d 1136, 1142 (10th Cir. 2013). At the summary judgment stage, the Court views all of the facts in the light most favorable to the non-movant and draws all reasonable inferences from the record in favor of the non-moving party. *Schaffer v. Salt Lake city Corp.*, 814 F.3d 1151, 1155 (10th Cir. 2016).

Although the non-moving party is entitled to all reasonable inferences from the record, the non-movant must still identify sufficient evidence requiring submission to the finder of fact in order to survive summary judgment. *Piercy v. Maketa*, 480 F.3d 1192, 1197 (10th Cir. 2007). Thus, if the non-movant bears the burden of proof on a claim at trial, summary judgment may be warranted if the

---

[6] In their briefing and at the hearing on Kingfisher's motions, Plaintiffs' counsel stated an additional sound study was ongoing. Plaintiffs, however, did not move the Court for additional time to respond in light of the ongoing studies, as permitted under Rule 56(d) of the Federal Rules of Civil Procedure.

movant points out a lack of evidence to support an essential element of that claim and the non-movant cannot identify specific facts that would create a genuine issue for trial. *Water Pik*, 726 F.3d at 1143-44. "An issue is 'genuine' if there is sufficient evidence on each side so that a rational trier of fact could resolve the issue either way," and "[a]n issue of fact is 'material' if under the substantive law it is essential to the proper disposition of the claim." *Adler v. Wal–Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir. 1998).

## DISCUSSION

### I.    STANDING

"Standing is a 'core component' of the case-or-controversy requirement of Article III necessary to invoke federal jurisdiction." *Tennille v. Western Union Co.*, 809 F.3d 555, 559 (10th Cir. 2015) (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992)). As noted, standing is a threshold consideration that involves the Court's power to hear a suit. *Green*, 568 F.3d at 792. Without standing, a plaintiff cannot proceed with a lawsuit in federal court. In *Steel Co. v. Citizens for a Better Environment*, 523 U.S. 83 (1998), the Supreme Court has observed that federal courts should not even *assume* a plaintiff had demonstrated standing in order to proceed to the merits of the underlying claim, regardless of the claim's significance:

> We decline to endorse such an approach because it carries the courts
> beyond the bounds of authorized judicial action and thus offends

10

fundamental principles of separation of powers. This conclusion should come as no surprise, since it is reflected in a long and venerable line of our cases. "Without jurisdiction the court cannot proceed at all in any cause. Jurisdiction is power to declare the law, and when it ceases to exist, the only function remaining to the court is that of announcing the fact and dismissing the cause."

*Id*. at 94 (quoting *Ex parte McCardle*, 7 Wall. 506, 514, 19 L.Ed. 264 (1868)).

To show standing, an aggrieved party must make three showings: (1) it has suffered an "injury in fact" that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision. *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc*., 528 U.S. 167, 180-81 (2000). The party invoking the court's jurisdiction bears the burden of establishing these elements. *Lujan*, 504 U.S. at 561. Standing is determined at the time the action was filed. *WildEarth Guardians v. Public Service Co. of Colo*., 690 F.3d 1174, 1182 (10th Cir. 2012).

Kingfisher's motion questions whether OWAA has the requisite standing to bring claims on behalf of its members, commonly referred to as "associational standing." The Supreme Court has held "an association may have standing to assert the claims of its members even where it has suffered no injury from the challenged activity." *Hunt v. Washington State Apple Advertising Comm'n*, 432 U.S. 333, 343-45 (1977) (citing *Warth v. Seldin*, 422 U.S. 490, 511 (1975) (further citations

omitted)); *Kan. Health Care Ass'n, Inc. v. Kan. Dept. of Soc. and Rehab. Servs.*, 958 F.2d 1018, 1021 (10th Cir. 1992). In order to have associational standing, OWAA must demonstrate (1) that its members would otherwise have standing to sue in their own right; (2) that the interests the organization seeks to protect are germane to the organization's purpose; and (3) that neither the claim asserted nor the relief requested requires the participation in the lawsuit of the individual members. *Southern Utah Wilderness Alliance v. Palma*, 707 F.3d 1143, 1153 (10th Cir. 2013) (citing *Friends of the Earth*, 528 U.S. at 181). Kingfisher contends OWAA cannot satisfy the first and third elements. Mot. for Summary Judgment at 7.

First, Kingfisher argues OWAA lacks associational standing because, in reality, it does not have any members on whose behalf it can sue. In support of this contention, Kingfisher notes that (1) when OWAA filed the present suit, it had no bylaws which established how one becomes a member, (2) OWAA's bylaws did not go into effect until ten months after this lawsuit was filed, and (3) the current bylaws set forth no membership qualifications, outside of the qualifications for directors.[7]

---

[7] In this regard, Kingfisher also argues that OWAA cannot sue on behalf of its directors.

"Because organizations derive associational standing from their members, the threshold inquiry is whether the organization actually *has* members." *Riverkeeper v. Taylor Energy Co., LLC*, 113 F.Supp.3d 870, 876 (E.D. La. 2015) (emphasis in original). Corporate formalities and formal membership structure are not constitutional requirements for associational standing. *Hunt*, 432 U.S. at 344-45; *Friends of the Earth, Inc. v. Chevron Chem. Co*., 129 F.3d 826, 827-28 (5th Cir. 1997) (finding associational standing even though non-profit environmental organization did not have formal membership requirements). Instead, the Court inquires whether an individual possesses certain "indicia of membership," such as (1) participating in the organization's elections, (2) financing the organization's activities, (3) associating with the organization voluntarily, and (4) providing sworn testimony of membership. *Id*. Thus, in determining whether the relationship between an association and its members is sufficiently close for constitutional standing, courts do not "exalt form over substance." *Hunt*, 432 U.S. at 345; *Chevron*, 129 F.3d at 828. This is a holistic test. The purpose of the inquiry is to determine whether the association provides the means by which its members "express their collective views and protect their collective interests." *Hunt*, 432 U.S. at 345.

Moreover, there is no requirement in associational standing that 100% of an organization's members have standing in their own right. To the contrary, at least

one member of the association must satisfy the constitutional requirements of injury-in-fact, causation, and redressability. *Hunt*, 432 U.S. at 342-43; *Colorado Outfitters Ass'n v. Hickenlooper*, 823 F.3d 537, 550 (10th Cir. 2016); *see also Osage Producers Ass'n v. Jewell*, No. 15-CV-469, 2016 WL 3093938, at *3 (N.D. Okla. June 1, 2016) ("The first prong of this test ... requires an associational plaintiff to specifically identify at least one member harmed by the defendant's conduct[.]") (citing *Summers v. Earth Island Inst.*, 555 U.S. 488, 49-99 (2009) (further citations omitted)).

Viewing the evidence and all reasonable inferences in the light most favorable to Plaintiffs, the Court finds Plaintiffs have satisfied the first factor. Albeit informal, OWAA has an identifiable membership structure: a person becomes a member through active, voluntary involvement, such as by attending meetings or otherwise requesting membership. Members are linked through informal networks and email contact lists. OWAA members elect the governing body and its members contribute to the financing of its activities. Members are also united for a common purpose, i.e., contesting what they perceive to be the harmful effects of wind turbines, and many of its members own property near the turbines at issue in this litigation. OWAA was clearly formed to provide the means by which its members "express their collective views and protect their collective interests." *Hunt*, 432 U.S. at 345. Although many members may not have a

tangible interest in challenging the turbines' construction and operation, associational standing does not require that each and every member meet the Article III requirements. The Court believes it would indeed be exalting form over substance to conclude OWAA lacks associational standing based on the objections raised by Kingfisher.

The third factor of associational standing – whether the relief requested will require the participation of the organization's members – represents prudential, as opposed to constitutional, concerns. *United Food & Commercial Workers Union Local 751 v. Brown Group, Inc.*, 517 U.S. 544, 557 (1996) ("the third prong of the associational standing test is best seen as focusing on these matters of administrative convenience and efficiency, not on elements of a case or controversy within the meaning of the Constitution."). With regard to individual participation in the relief requested, the Supreme Court has stated:

> [W]hether an association has standing to invoke the court's remedial powers on behalf of its members depends in substantial measure on the nature of the relief sought. If in a proper case the association seeks a declaration, injunction, or some other form of prospective relief, it can reasonably be supposed that the remedy, if granted, will inure to the benefit of those members of the association actually injured. Indeed, in all cases in which we have expressly recognized standing in associations to represent their members, the relief sought has been of this kind.

*Warth v. Seldin*, 422 U.S. 490, 515 (1975). Seeking equitable relief, however, does not per se overcome the prudential prong of associational standing; associational

standing is only proper if neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit. *Hunt*, 432 U.S. at 343. Nevertheless, courts have held where such individual participation is minimal, i.e., where a limited amount of individual proof may be necessary, such requirement, in itself, does not preclude associational standing. *See, e.g., National Ass'n of Coll. Bookstores, Inc. v. Cambridge Univ. Press*, 990 F.Supp. 245, 249-50 (S.D.N.Y. 1997) ("The fact that a limited amount of individuated proof may be necessary does not in itself preclude associational standing.") (citing *New York State Nat'l Org. of Women v. Terry*, 886 F.2d 1339, 1349 (2d Cir. 1989)).

Kingfisher asserts OWAA fails the third prong because the lawsuit requires numerous individualized determinations of fact as to how each member is allegedly affected by the turbines. Plaintiffs contend that their injury is solely related to their proximity to the wind farm, and the only individualized proof necessary would be the location of properties owned by OWAA's members. The Court, viewing the evidence and all reasonable inferences in the light most favorable to Plaintiffs, finds that neither the claims asserted nor the relief requested by OWAA would require any significant participation of individual members in the lawsuit. OWAA requests equitable relief in the form of an injunction. *See* Second Amend. Compl., ¶¶ 61, 66-70 [Doc. No. 69]. Although the anticipatory nuisance claims at issue would require some individualized proof among the

plaintiffs, the Court believes such a showing may be satisfied without the significant participation of individual members. Accordingly, the "relief requested" aspect of the third prong of the *Hunt* test is satisfied.

Having found that OWAA meets the threshold requirements for associational standing, the Court declines to consider whether OWAA has standing under the "functional equivalency test" or whether the directors of OWAA constitute "members" for purposes of associational standing.

## II. ANTICIPATORY NUISANCE

Oklahoma law provides a common law and statutory cause of action for private nuisance. By statute, "[n]uisance ... consists in unlawfully doing an act, or omitting to perform a duty, which act or omission annoys, injures, or endangers the comfort, repose, health or safety of others; or, in any way renders other persons insecure in life, or in the use of property." *Briscoe v. Harper Oil Co.*, 1985 OK 43, ¶ 9, 702 P.2d 33, 36 (quoting 50 OKLA. STAT. § 1). Common law nuisance is defined more broadly as the "unwarrantable, unreasonable or unlawful use by a person of his own property to the injury of another." *B.H. v. Gold Fields Mining Corp.*, 506 F.Supp.2d 792, 800 (N.D. Okla. 2007) (citation omitted).[8] Under either

---

[8] There are several kinds of nuisances, two of which are relevant to this discussion. A nuisance at law, also called a nuisance per se, is "a nuisance at all times and under any circumstances, regardless of location or surroundings." *See* 66 C.J.S. *Nuisances* § 4 (2013). A nuisance in fact, also called a nuisance per accidens, is "one which becomes a nuisance by reasons of circumstances and surroundings."

a common law or statutory nuisance claim, a court may award, among other things, injunctive relief against a defendant who created, maintained, or owns a nuisance. *Id*. (citing 50 OKLA. STAT. §§ 5, 6, 13).

Oklahoma law further recognizes a claim for "anticipatory nuisance," i.e., a plaintiff can seek injunctive relief without having to wait for the actual infliction of a loss. *See, e.g., Sharp v. 251st Street Landfill, Inc*., 1996 OK 109, ¶ 16, 925 P.2d 546, 552 (overruled on other grounds by *DuLaney v. Oklahoma State Dept. of Health*, 1993 OK 113, 868 P.2d 676) ("[W]hen a neighboring landowner is confronted with a nuisance ... they do not have to wait [for] the actual infliction of such loss, but have a right to apply to a court for injunctive relief."). However, the harm suffered must be irreparable – not compensable in money damages – and the evidence must be "clear and convincing that there is a reasonable probability of injury, not just a mere apprehension." *Id*. (citing *McPherson v. First Presbyterian Church*, 1926 OK 214, ¶ 18, 248 P. 561, 566). Further, the complained-of injury "must not be nominal, theoretical or speculative." *Id*. at 549 (citing *Jackson v. Williams*, 1985 OK 103, ¶ 9, 714 P.2d 1017, 1020). Here, Plaintiffs advance solely

---

*Id*. Generally, the conduct of a lawful business is not a nuisance per se. However, a lawful business may become a nuisance in fact if the place and manner of operation result in such substantial injury as to amount to an invasion of a homeowner's rights to repose and the enjoyment of their property. *See Finance & Inv. Co., Ltd. v. UMA, L.L.C.*, 2009 OK CIV APP 105, ¶ 16, 227 P.3d 1082, 1087-88.

a cause of action for anticipatory nuisance, and seek only permanent injunctive relief.

The Court must consider whether Kingfisher has identified a lack of evidence on an essential element of Plaintiffs' anticipatory nuisance claim, and whether Plaintiffs have come forward with sufficient evidence to present a triable issue. If Plaintiffs' evidence is insufficient, it cannot, as a matter of law, achieve actual success on the merits, i.e., that the KWP is, or will constitute a nuisance. Further, to be entitled to its requested relief – a permanent injunction – Plaintiffs must not only show actual success on the merits, but must also make out a clear and unequivocal showing of the remaining elements of the equitable remedy.

For their anticipatory nuisance claim, Plaintiffs rely almost entirely on asserted adverse health effects and annoyance caused by the turbines. *See, e.g.*, Pl. Resp. to Mot. for Summary Judgment at 37-42 [Doc. No. 137].[9] Kingfisher asserts

---

[9] Plaintiffs make passing reference in their briefing to aesthetics and interference with intended uses of their land, and mentioned property values and investments at oral argument. However, no persuasive argument or significant evidence in the summary judgment proceedings is devoted to these areas of potential harm. Indeed, regarding aesthetic impact, Plaintiffs cite to a single, non-precedential decision from the Oklahoma Court of Civil Appeals. No meaningful evidence regarding diminution of property values was tendered, nor were issues regarding frustrated land use or impaired aesthetics developed. Moreover, expert opinion evidence proffered by Plaintiffs was restricted to sound and infrasound levels and potential health effects, and related assertions regarding sleep disturbance and its impact on health.

that Plaintiffs have failed to present more than merely speculative proof of harm from the operation of the turbines.

On the record before it, the Court concludes that Plaintiffs have failed to make the required showing of likely harm. Specifically, Plaintiffs have failed to show a triable issue that there exists a reasonable probability an injury will occur as a result of the wind farm's operation. The harm alleged by Plaintiffs and their experts, at this juncture, is speculative at best, and in the Court's view, a reasonable trier of fact could not conclude, based on the evidence presented to date, that the shadow flicker or sound/infrasound from the turbines has caused or will cause adverse health effects to Plaintiffs. Moreover, the Court finds that the aesthetic concerns voiced by certain plaintiffs, based on the current record and absent any significant evidence of adverse health effects, are insufficient alone to constitute an actionable nuisance. At this late stage of the litigation, after a full opportunity to conduct discovery and marshal evidence, the injuries cited by Plaintiffs are simply too speculative to constitute harm sufficient under their anticipatory nuisance theory and, as discussed *infra*, to support the mandatory injunctive relief requested.[10]

---

[10] Whether an activity constitutes a nuisance is ordinarily a question of fact. *See e.g., Smilie v. Taft Stadium Bd. of Control*, 1949 OK 42, ¶ 13, 205 P.2d 301, 307. But as with any question of fact, such issue can be resolved on summary judgment if the evidence "is so one-sided that one party must prevail as a matter of law."

For a party to obtain a permanent injunction, it must prove: (1) actual success on the merits; (2) irreparable harm unless the injunction is issued; (3) the threatened injury outweighs the harm that the injunction may cause the opposing party; and (4) the injunction, if issued, will not adversely affect the public interest. *Southwest Stainless, LP v. Sappington*, 582 F.3d 1176, 1191 (10th Cir. 2009) (quoting *Prairie Band Potawatomi Nation v. Wagnon*, 476 F.3d 818, 822 (10th Cir. 2007)). A permanent injunction is an extraordinary remedy, thus, the right to relief must be clear and unequivocal. *Schrier v. Univ. of Colo.*, 427 F.3d 1253, 1258 (10th Cir. 2005). As noted above, "a mere fear or apprehension of injury is insufficient." *Burlington Northern and Santa Fe Ry. Co. v. Grant*, 505 F.3d 1013, 1023 (10th Cir. 2007) (quoting *Sharp*, 925 P.2d at 549). "Moreover, the Court recognizes that mandatory permanent injunctions are looked upon disfavorably and are generally only granted in compelling circumstances." *Florham Park Chevron, Inc. v. Chevron U.S.A., Inc.*, 680 F.Supp. 159, 166 (D.N.J. 1988) (citation omitted).

In addition to the failure of proof regarding the harm required to establish a claim for anticipatory nuisance, the balance of hardships as between the parties cannot reasonably be viewed as tipping in favor of Plaintiffs. Defendant correctly points out that, because Plaintiffs elected not to pursue preliminary injunctive relief, there was no legal impediment to its continued construction – and

*Simpson v. Univ. of Colo.*, 500 F.3d 1170, 1179 (10th Cir. 2007) (quoting *Bingaman v. Kan. City Power & Light Co.*, 1 F.3d 976, 980-81 (10th Cir. 1993)).

completion – of the wind farm during the pendency of this case. Thus, the KWP is now operational, at a cost of approximately $450,000,000. Plaintiffs' stated reason for eschewing the pursuit of preliminary injunctive relief early on in this case – that they would not likely have been able to afford an injunction bond – is unavailing (the Court has "wide discretion" in determining the amount of a bond, *see Dominion Video Satellite, Inc. v. EchoStar Satellite Corp.*, 269 F.3d 1149, 1158 (10th Cir. 2001) (citation omitted); *Coquina Oil Corp. v. Transwestern Pipeline Co.*, 825 F.2d 1461, 1462 (10th Cir. 1987)). In the face of Plaintiffs' speculative evidence of injury from the KWP, the enormous cost and delay associated with the relief sought by Plaintiffs strongly militates against an injunction here, and compels the clear conclusion that the balance of hardships here does not tip in Plaintiffs' favor.

Because Plaintiffs have failed to make an adequate showing of success on the merits, irreparable harm, or that the threatened injury outweighs the harm that the injunction would cause Kingfisher, the Court need not consider the remaining factor regarding the issuance of an injunction. *See Heideman v. South Salt Lake City*, 348 F.3d 1182, 1188-89 (10th Cir. 2003) ("It is the [plaintiff's] burden to establish that each of these factors tips in his or her favor.") (citing *Kikumura v. Hurley*, 242 F.3d 950, 955 (10th Cir. 2001)). Thus, Plaintiffs have not established the existence of a triable issue regarding likely harm sufficient to support their

claims of anticipatory nuisance, and have failed to demonstrate that a rational trier of fact could find in their favor regarding an entitlement to permanent injunctive relief.

The Court's ruling is confined to the particular facts and circumstances of this case, and the singular claim advanced by Plaintiffs. Based on the record before it, the Court only concludes that Plaintiffs, under their present theory of *anticipatory* nuisance, have failed to meet their burden of showing injury will likely occur from the turbines' operation, and that they would be entitled to the remedy they seek.

## CONCLUSION

The Court has carefully considered all of the parties' arguments. To the extent any issue was not specifically addressed above, it is either moot or without merit. Defendant's Motion for Summary Judgment on the issue of standing [Doc. No. 116] is **DENIED**, and its Motion for Summary Judgment on the Merits of Plaintiffs' Nuisance Claim [Doc. No. 117] is **GRANTED** as set forth herein. A separate judgment shall be issued forthwith.

**IT IS SO ORDERED** this 13th day of October, 2016.

TIMOTHY D. DeGIUSTI
UNITED STATES DISTRICT JUDGE